UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

IN RE: SUNEDISON, INC. ERISA LITIGATION                    <u>OPINION AND ORDER</u>

                                                          16-md-2742 (PKC)
                                                          16-mc-2744 (PKC)

----------------------------------------------------------x

CASTEL, U.S.D.J.

                Plaintiffs are participants in a defined-contribution retirement savings plan that

was available to employees of SunEdison, Inc. ("SunEdison" or the "Company").  Before

SunEdison filed for bankruptcy protection in April 2016, it briefly described itself as the world's

largest renewable energy development company.  Plaintiffs allege that over the course of 2015

and 2016, the Company launched an aggressive expansion strategy, which left SunEdison with

dwindling liquidity and onerous borrowing terms.  Plaintiffs allege that management's decisions

caused a collapse in SunEdison's share price and drove the Company into bankruptcy.

                SunEdison made available to its employees a retirement savings plan (the "Plan")

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001, <u>et</u> <u>seq.</u>  Within the Plan, one investment option was an employee stock ownership plan

("ESOP") that invested in the publicly traded shares of SunEdison itself (the "SunEdison Stock

Fund").

                Plaintiffs allege that defendants continued to offer SunEdison shares as an

investment option despite knowing that the Company was in extreme financial peril.  Plaintiffs

allege that defendants knew or should have known that SunEdison was teetering on collapse, and

that they should have frozen the SunEdison Stock Fund's purchase of additional shares and/or

sold its existing holdings.  They allege that defendants breached their duties under ERISA to act

as prudent fiduciaries, monitor the Plan's investments and loyally represent the best interests of the Plan and its beneficiaries.

Defendants move to dismiss the Second Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ. P. Because the Complaint does not satisfy the pleading standards set forth in <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 134 S. Ct. 2459 (2014), or otherwise set forth facts that state a claim for relief, the motion is granted.

BACKGROUND

Plaintiffs Eric O'Day, Robert Linton and Lee Medina are former SunEdison employees who participated in the Plan pursuant to ERISA, 28 U.S.C. § 1102(7). (Compl't ¶¶ 13-16.) They allege that defendants breached their obligations to act as prudent fiduciaries under ERISA by continuing to make shares of SunEdison stock an investment option under the Plan between the dates of July 20, 2015 and April 21, 2016 (the "Relevant Period"), when a reasonable fiduciary would not have done so in light of the Company's rapidly deteriorating finances and poor long-term prospects. (Compl't ¶¶ 1-2.)

All defendants sat on either the Company's board of directors or its Investment Committee. As plan administrator, the Investment Committee was responsible for the Plan's day-to-day management, and was comprised of SunEdison officers and employees appointed by the Company's board of directors.[1] (Compl't ¶¶ 26, 41.) Plaintiffs allege that the board of directors had a duty to appoint prudent individuals to serve on the Investment Committee and to monitor its performance, and that the directors failed to take appropriate actions when they knew

---

[1] The Investment Committee's members included SunEdison CFO and Chief Administrative Officer Brian Wuebbels, Vice President of Investor Relations Phelps Morris, Chief Human Resource Officer Matthew Herzberg, Senior Compensation and Benefits Leader Matt Martin, and Global Benefits Manager James Welsh, all of whom are named as defendants. (Compl't ¶¶ 28-32.)

or should have known that the Company's future was imperiled.[2]  (Compl't ¶¶ 5, 7.)  The Complaint alleges that all defendants were fiduciaries of the SunEdison Stock Fund under ERISA, 29 U.S.C. § 1002(21)(A)(i).  (Compl't ¶¶ 242-43.)

The Plan is a defined-contribution retirement savings plan that covers eligible employees of SunEdison and its subsidiaries.  (Compl't ¶ 39.)  Participants had a choice to contribute between 1% and 50% of their pre-tax salary to the Plan.  (Compl't ¶ 44.)  During the Relevant Period, the Plan offered a number of investment options to employees, including the SunEdison Stock Fund, whose holdings typically consisted of 97% SunEdison stock and 3% cash.  (Compl't ¶ 46.)

The Complaint describes "the rise and fall of SunEdison," which once touted itself as "the world's largest renewable energy development company," before it launched an ambitious expansion strategy that left it with unsustainable debt and diminishing liquidity.  (Compl't ¶ 57.)  Plaintiffs allege that SunEdison lacked adequate internal controls to track its cash flows and made numerous public misrepresentations about the Company's financial well-being.  (Compl't ¶¶ 58-63.)  They describe how SunEdison's acquisition spree and its decision to spin off two subsidiaries as public companies contributed to a growing liquidity crisis that management failed to disclose, culminating in the Company's dependence on certain high-interest, undisclosed loans.  (Compl't ¶¶ 64-179.)  Plaintiffs allege that SunEdison CEO Ahmad Chatila and CFO Brian Wuebbels had the incentive to pursue risky, high-growth strategies

---

[2] The director defendants include Ahmad Chatila, the company's CEO, president and director, as well as board members Emmanuel T. Hernandez, Antonio R. Alvarez, Peter Blackmore, Clayton Daley, Georganne Proctor, Steven Tesoriere, James Williams and Randy Zwirn.  (Compl't ¶¶ 17-25.)

because the Company's executive-compensation package adopted a formula based on projected future earnings, and not actual earnings.  (Compl't ¶¶ 104-12.)

According to plaintiffs, because of SunEdison's mounting problems, its shares of common stock should not have been available as an investment choice under the Plan.  (Compl't ¶¶ 180-207.)  Plaintiffs allege that SunEdison's risks were "widely reported," and that based on these public reports, defendants knew or should have known that those risks threatened the investments of the SunEdison Stock Fund.  (Compl't ¶¶ 180-81.)  When the Company's public statements gradually revealed the extent of its liquidity shortfalls and unfavorable loan terms, the price of SunEdison common stock dropped accordingly.  (Compl't ¶¶ 183-207.)  Plaintiffs allege that, as these disclosures came to light, defendants failed to conduct themselves as prudent ERISA fiduciaries and to undertake an investigation of whether SunEdison remained a prudent investment.  (Compl't ¶¶ 183-207.)   In April 2016, the New York Stock Exchange de-listed SunEdison and suspended trading of its common stock, and the Company filed for bankruptcy protection. (Compl't ¶¶ 206-07.)

Plaintiffs also allege that, as Company insiders, the defendants had access to non-public information about the risks confronting SunEdison.  (Compl't ¶ 218.)  They allege that if defendants had divested the Plan of SunEdison shares based on non-public information, they could have saved the Plan millions of dollars.  (Compl't ¶¶ 219-20.)  The Complaint alleges that defendants could not reasonably have concluded that accumulating more SunEdison shares would be beneficial to participants, and that the exercise of prudence should have prompted defendants to freeze further share purchases and sell existing holdings.  (Compl't ¶ 222, 224, 231-32.)

The Complaint alleges that defendants breached their fiduciary duties under ERISA, 29 U.S.C. § 1109(a), by failing to discharge their duties solely in the interest of the Plan's participants. (Compl't ¶¶ 245-46.) Count One alleges that the Investment Committee defendants failed to prudently manage the Plan's assets and thus breached fiduciary duties under ERISA. (Compl't ¶¶ 255-66.) Count Two alleges that all defendants breached a duty of loyalty to the Plan's participants and beneficiaries. (Compl't ¶¶ 267-79.) Count Three alleges that all defendants failed to adequately monitor the performance of the Plan's holdings, and that the board of directors separately failed to monitor the performance of the Investment Committee that administered the Plan. (Compl't ¶¶ 280-91.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

In Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2470 (2014), the Supreme Court stated that courts must undertake a "careful, context-sensitive scrutiny of a

5

complaint's allegations" that an ESOP fiduciary acted imprudently by continuing a plan's purchase of company stock. Fifth Third requires a district court to consider at the pleading stage whether a plaintiff has plausibly alleged an alternative to the ESOP's continued purchase of company shares, including whether the plaintiff's proposed course of action would have been permissible under the federal securities laws and whether any prudent fiduciary could have concluded that plaintiffs' proposed actions would have done more harm than good to a plan and its participants. Id. at 2472-73. The Second Circuit has cautioned plaintiffs against attempts to "plead around" Fifth Third. Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 65 (2d Cir. 2016).

DISCUSSION.

A. Overview of ERISA's Duties for ESOP Fiduciaries.

"The central purpose of ERISA is 'to protect beneficiaries of employee benefit plans.'" Rinehart, 817 F.3d at 63 (quoting Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009)). "ERISA requires fiduciaries to use 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc., 712 F.3d 705, 709 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(B)). This duty is assessed "according to the objective prudent person standard developed in the common law of trusts," one that requires the fiduciary to act with "prudence, not prescience." Rinehart, 817 F.3d at 63-64 (quotation marks omitted). A fiduciary who breaches this duty "shall be personally liable" for any resulting losses. 29 U.S.C. § 1109(a).

ERISA permits and encourages employers to offer ESOPs, which are considered beneficial because they encourage participants to invest their savings in the stock of their employer. Fifth Third, 134 S. Ct. at 2467; see also Rothstein v. Am. Int'l Grp., 837 F.3d 195, 208 (2d Cir. 2016) (ERISA balances Congress's encouragement of ESOPs with a recognition that the interests of a plan and the employer will sometimes diverge). Fiduciaries of an ESOP are required to act in the capacity of a prudent person, but, because of the nature and purpose of an ESOP, they have no duty to diversify the ESOP's holdings. Fifth Third, 134 S. Ct. at 2467; 29 U.S.C. § 1104(a)(2).

When plan documents require ESOP fiduciaries to invest in the stock of a struggling company, a prudent fiduciary may "find[] himself between a rock and a hard place . . . ." Fifth Third, 134 S. Ct. at 2470. If the ESOP continues to invest in a declining stock, the fiduciary could be potentially liable for acting imprudently in violation of ERISA's standard of care, 29 U.S.C. § 1104(a)(1)(B), but if it stops investing and the company's stock price rises, the fiduciary could potentially be liable for disobeying the plan's governing documents in violation of 29 U.S.C. § 1104(a)(1)(D). See id. Under ERISA, the duty of prudence nevertheless "trumps the instructions of a plan document . . . ." Id. at 2468. Fiduciaries of ESOPs are not entitled to a presumption of prudence, and courts must undertake a "careful, context-sensitive scrutiny of a complaint's allegations." Id. at 2470.

In Fifth Third, the Supreme Court explained that a breach of prudence claim against an ESOP fiduciary must overcome certain pleading hurdles, depending on whether the claim is premised on public information that was available to the markets or, alternatively, whether the information was known exclusively to insiders. Id. at 2471-73.

7

"[W]here a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." Id. at 2471.  Because markets are presumed to function efficiently and incorporate public information, investors rely on a stock's price as the market's accurate valuation.  Id.  The Supreme Court left open the possibility that in certain "special circumstances," a plaintiff might be able to plausibly allege that a security's market price did not accurately reflect its actual value in light of all public information, but it did not offer guidance as to what those circumstances could entail.  Id. at 2471.  The Second Circuit has since cautioned that a plaintiff cannot "plead around Fifth Third" by claiming that a company had "excessive risk" not reflected in a share's market value.  Rinehart, 817 F.3d at 65-66.

Separately, where a plaintiff alleges a breach of the duty of prudence based on inside, non-public information, the "plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it."  Fifth Third, 134 S. Ct. at 2472.  "[C]ourts must bear in mind that the duty of prudence . . . does not require a fiduciary to break the law," including the securities laws' restrictions on sales based on inside information.  Id.  A court reviewing a motion to dismiss "should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases – which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment – or publicly disclosing negative information would do more harm than good to the fund by causing a

drop in the stock price and a concomitant drop in the value of the stock already held by the fund." Id. at 2473.

B. Plaintiffs' Breach of Prudence Claim Based on Publicly Available Information Is Dismissed.

The Complaint alleges that members of the Investment Committee breached a duty of prudence by continuing to offer SunEdison shares as an investment option under the Plan, despite public information suggesting its shares were excessively risky and unfit for retirement savings. (Compl't ¶¶ 212-17.) Because plaintiffs have not satisfied the pleading threshold of Fifth Third and Rinehart, any prudence-based claim premised on public information is dismissed.

In Fifth Third, the Supreme Court concluded that claims alleging a breach of the duty of prudence based on the market's over-valuation of share price "are implausible as a general rule, at least in the absence of special circumstances." 134 S. Ct. at 2471. It explained that there is "a presumptively efficient market" that "provides the best estimate of the value of the stocks traded on it . . . ." Id. at 2472 (quotation marks omitted). Because an efficient market will incorporate all publicly available information into the price of publicly traded stocks, it is generally implausible to allege that a fiduciary knew or should have known that a stock was overvalued in light of public information. Id. at 2741-42.

In Rinehart, the Second Circuit concluded that Fifth Third applies to any prudence-based claim premised on publicly available information, and is not limited to a claim asserting market over-valuation. 817 F.3d at 66. The Rinehart plaintiffs alleged that the fiduciaries of an ESOP for Lehman Brothers employees imprudently continued to offer company shares as an investment option, despite public information showing that the investment "had

become increasingly risky throughout 2008 . . . ."  Id. at 65.  Plaintiffs attempted to distinguish

their claims from Fifth Third by alleging a claim of "excessive risk" rather than asserting that the

share price was inflated above its true market value.  Id. at 65-66.  However, the Second Circuit

concluded that Fifth Third's analysis is "applicable to all allegations of imprudence based upon

public information – regardless of whether the allegations are framed in terms of market value or

excessive risk . . . ."  Id. at 66 (emphasis in original); see also In re Citigroup ERISA Litig., 104

F. Supp. 3d 599, 615-16 (S.D.N.Y. 2015) (dismissing as implausible a claim that ESOP

fiduciaries imprudently continued to permit investment in an excessively risky company because

the market had already incorporated risk into share price) (Koeltl, J.).

    As in Rinehart, plaintiffs allege that defendants knew that SunEdison shares were

too risky to be an appropriate retirement investment.  (Compl't ¶¶ 7-9, 56, 211, 230, 256.)  The

Complaint purports to identify special circumstances in the public information known about the

Company, pointing to negative press coverage and the assertion that "global markets turned

decisively against SunEdison and its growth strategy" by mid-2015.  (Compl't ¶¶ 212-17.)  It

lists eight items of public information that it calls "special circumstances" going toward "the

financial stability of the Company . . . ."  (Compl't ¶ 212.)  They include negative press coverage

of SunEdison's public offerings for its two subsidiary YieldCo companies, corresponding drops

in SunEdison share price, a 70% drop in the share price of a SunEdison competitor, the

reclassification of Company debt, drastic changes to the composition of management at a

SunEdison subsidiary and a March 2016 *Wall Street Journal* article reporting on an SEC

investigation of the Company.  (Compl't ¶ 212.)  Plaintiffs assert that these special circumstances

demonstrated that SunEdison was not a prudent retirement investment.  (Compl't ¶ 213.)

But these items of public information fail to allege the special circumstances required by <u>Fifth Third</u> and <u>Rinehart</u>. They identify negative developments for the Company, corresponding press reports and subsequent drops in share price. These drops in share price correlated to negative news, which is consistent with the market's integration of risk into share value. Separately, a steep drop in the share price of an unaffiliated competitor does not plausibly allege that a fiduciary was imprudent in continuing to make shares of SunEdison available under the Plan. Instead of supporting the plausibility of plaintiffs' claims, the relationship between negative public announcements and declining share price make it less plausible that SunEdison shares were riskier than the market's assessment. The Court therefore concludes that plaintiffs have not alleged the special circumstances required by <u>Fifth Third</u> and <u>Rinehart</u>. <u>See also</u> <u>Kinra v. Chicago Bridge & Iron Co.</u>, 2018 WL 2371030 (S.D.N.Y. May 24, 2018) (negative public reports do not constitute special circumstances) (Schofield, J.).

With no plausible allegations that show special circumstances, plaintiffs are left with their claim that defendants breached a duty of prudence by permitting participants to invest in a plan that was excessively risky. This does not overcome the pleading threshold adopted by <u>Fifth Third</u> and <u>Rinehart</u>, and therefore fails to allege breach of a duty of prudence. Any such claim premised upon defendants' actions in light of public information is therefore dismissed.

C.  <u>Plaintiffs' Breach of Prudence Claim Premised on Information Known Only to Company Insiders Is Dismissed.</u>

As noted, <u>Fifth Third</u> also set a pleading bar for claims premised on a fiduciary's decision to continue purchasing company shares in an ESOP, despite the fiduciary's access to negative, non-public information. "To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the

defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." Fifth Third, 134 S. Ct. at 2472.

First, Fifth Third explained that the duty of prudence under ERISA does not require a fiduciary to break the law, possibly including the federal securities laws. Id. at 2472-73. If a complaint alleges that fiduciaries should have stopped purchases or disclosed non-public information, courts should consider at the pleading stage any conflict with insider-trading or corporate-disclosure laws. Id. at 2743.

A court separately must consider "whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases – which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment – for publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." Id. at 2473. The Supreme Court emphasized this requirement in Amgen Inc. v. Harris, 136 S. Ct. 758, 760 (2016) (per curiam), when it explained that the Ninth Circuit failed to weigh whether a complaint plausibly alleged that a prudent fiduciary in the same position "'could not have concluded' that the alternative action 'would do more harm than good.'" (quoting Fifth Third, 134 S. Ct. at 2463). As articulated by the Fifth Circuit, under this formulation, "the plaintiff bears the significant burden of proposing an alternative course of action so clearly beneficial that a prudent fiduciary could not conclude that it would be more likely to harm the fund than to help it." Whitley v. BP, P.L.C., 838 F.3d 523, 529 (5th Cir. 2016) (emphasis in original).

The Complaint notes that SunEdison's share price collapsed by 100% during the Relevant Period. (Compl't ¶ 209.) It asserts that, "following proper disclosure," defendants could have satisfied their duties under ERISA by "freezing or limiting additional purchases of SunEdison Stock by the Plan" and "allowing for the orderly liquidation of the Plan's holdings of SunEdison Stock." (Compl't ¶ 209.) According to the Complaint, defendants "could not reasonably have concluded" that stopping additional purchases of SunEdison shares "would do more harm than good" by potentially causing a drop in share price, since they had "already observed a significant drop" in the Company's share price. (Compl't ¶¶ 222, 235-38.) The Complaint explains that the Plan held a relatively small percentage of the Company's total outstanding shares, making it unlikely that a freeze of purchases would have caused a significant price drop. (Compl't ¶ 224.) The Complaint also contrasts the performance of SunEdison shares with other investment options available to Plan participants, and alleges that for every $100 invested in the SunEdison Stock Fund at the start of the Relevant Period, a participant would have lost all but $1.47, whereas the alternative investments available under the Plan would have left a participant with an average figure of $97.83. (Compl't ¶¶ 239-41.)

These allegations do not satisfy Fifth Third's strenuous pleading requirements. Plaintiffs speculate that a "proper disclosure" and subsequent freeze on purchases and liquidation of shares would not have done more harm than good. (Compl't ¶ 209.) While this allegation incorporates language from Fifth Third, it is conclusory, and does not plausibly explain its reasoning. In Rinehart, plaintiffs alleged that fiduciaries of an ESOP for Lehman Brothers employees should have disclosed material non-public information and divested company stock during the summer of 2008, when the company was on the eve of collapse. 817 F.3d at 68.

Rinehart concluded that "[s]uch an alternative action in the summer of 2008 could have had dire consequences," and affirmed the district court's conclusion that a prudent fiduciary could have concluded that divesting or freezing company stock would do more harm than good by accelerating the company's collapse and reducing the plan's value. Id. (citing In re Lehman Bros. Sec. & ERISA Litig., 113 F. Supp. 3d 745, 763 (S.D.N.Y. 2015)). Plaintiffs have not plausibly explained why such a scenario would not apply here.

Plaintiffs do not plausibly allege why such actions would not have triggered a decline in share price due to the Plan's small holdings in SunEdison stock relative to the overall number of shares outstanding. The Sixth Circuit rejected such reasoning, concluding "that ceasing purchases might indicate to the market 'that insider fiduciaries viewed the employer's stock as a bad investment,'" thus causing the stock to drop and "hurting plan participants." Saumer v. Cliffs Natural Resources Inc., 853 F.3d 855, 865 (6th Cir. 2018) (quoting Fifth Third, 134 S. Ct. at 2473). The same opinion described a fiduciary's divestment of a distressed company's stock as a "clarion call" that the fiduciary lacked confidence in the company, with a potential "catastrophic effect" on the stock price and plan participants. Id. at 860. Given the status of the Plan's fiduciaries within the Company, a freeze or liquidation of shares would plausibly have prompted a negative market reaction on a scale beyond the mathematic proportion of the Plan's holdings standing alone.

The Complaint asserts that any such negative consequence is "highly debatable" and "more appropriate for expert testimony" than scrutiny on a motion to dismiss. (Compl't ¶ 224.) However, Fifth Third "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently" and a "context specific" consideration of

then-prevailing circumstances. 134 S. Ct. at 2471. On a motion to dismiss, courts are required to address whether a complaint contains facts that plausibly allege that any reasonable fiduciary would have concluded that the benefits of plaintiffs' proposed actions would have been greater than the possible harms of a drop in stock price and loss of value to a plan. Id. at 2473; accord Amgen, 136 S. Ct. at 760. Under Fifth Third, it is a plaintiff's burden to set forth facts that plausibly allege why the proposed course of action would have had the claimed beneficial effect.

Plaintiffs allege that to the extent defendants were concerned that their actions to protect Plan participants may have violated the securities laws, they could have sought guidance from the Department of Labor or the SEC. (Compl't ¶ 234.) This allegation turns Fifth Third's pleading burden on its head, and leaves an open-ended question of whether plaintiffs' proposed course of action to freeze and/or sell the Plan's holdings would be consistent with the federal securities laws.

Because the Complaint has raised conclusory and speculative allegations that defendants breached their duty of prudence by not disclosing material non-public information and thereafter selling or freezing the Plan's purchase of SunEdison's shares, plaintiffs' prudence-based claims premised on such non-public information are dismissed.

D. The Complaint Does Not Plausibly Allege a Separate Failure to Monitor Claim.

Count Three alleges that defendants violated their duties under ERISA by failing to monitor the performance of the Plan's holdings. (Compl't ¶¶ 280-91.) The Complaint identifies items of public information allegedly showing that Company stock "was clearly an imprudent investment option," and alleges that the failure "to actively monitor and assess" the prudence of the investment caused a material risk to the SunEdison Stock Fund. (Compl't ¶

15

211.)  Plaintiffs urge that the duty to monitor creates a "'procedural' prudence" requirement, which, they say, requires a fiduciary to review a plan's holdings and make "prudent consideration" of whether its investments should continue, regardless of whether the fiduciaries ultimately maintain or alter the Plan's holdings.  (Opp. Mem. at 18.)

The Supreme Court described the duty to monitor in <u>Tibble v. Edison International</u>, 135 S. Ct. 1823, 1828 (2015).  The <u>Tibble</u> plaintiffs alleged that a plan's fiduciaries harmed participants by purchasing mutual funds at a retail price, instead of at a less-expensive price available to institutional investors.  <u>Id.</u> at 1826.  <u>Tibble</u> explained that "[u]nder trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones.  This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments from the outset."  <u>Id.</u> at 1828.  "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."  <u>Id.</u> at 1829.  <u>Tibble</u> declined to further define the scope of the duty to monitor.  <u>Id.</u>

The relationship between <u>Tibble</u> and the <u>Fifth Third</u> pleading requirements was raised in <u>Rinehart</u>, which endorsed without elaboration the district court's conclusion that monitoring claims involving an ESOP should be reviewed under the standards of <u>Fifth Third</u>. 817 F.3d at 66 n.3.  Preceding the Second Circuit's <u>Rinehart</u> decision, the district court explained: "Plaintiffs are correct that changed circumstances can trigger a fiduciary's obligation to review the prudence of an investment, but to make out such a claim plaintiffs must allege that circumstances actually have changed sufficiently and that the failure to make such a review injured the plan."  <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 113 F. Supp. 3d 745, 757 (S.D.N.Y. 2015) (Kaplan, J.).  Judge Kaplan concluded that "plaintiffs allege no facts to suggest that the

review they claim should have been done would have averted the injury that ultimately occurred when Lehman later collapsed." Id. He also described as "pure speculation" the allegation that additional review by plan fiduciaries "would or should have resulted in the slightest change of course" in the plan's holdings. Id. at 757-58.

The Second Circuit expressly endorsed the district court's analysis, stating in a footnote that "[f]or the reasons stated by the District Court," the plaintiffs' reliance on Tibble "is misplaced." Rinehart, 817 F.3d at 66 n.3. Similarly, prior to Rinehart, Judge Koeltl observed that Tibble's description of the duty to monitor had limited application to claims brought against fiduciaries of an ESOP, because the claims in Tibble were not directed to a drop in the stock price of the employer's shares. In re Citigroup ERISA Litig., 112 F. Supp. 3d 156, 159-60 (S.D.N.Y. 2015). He noted that Tibble cited Fifth Third without comment, for the limited purpose of re-affirming ERISA standards on duty-of-prudence claims, and that Tibble did not speak to Fifth Third's pleading standard. Id. at 160.

Under the reasoning of Judge Kaplan, which Rinehart endorsed, it remains plaintiffs' burden to allege facts suggesting that additional monitoring of the Plan's holdings "would have averted the injury" and caused a "change of course." 113 F. Supp. 3d at 757-58. The Complaint does not do so. Plaintiffs' monitoring claim again fails to plausibly allege that no prudent fiduciary could have concluded that a change in the Plan's holdings would have done more harm than good. Fifth Third, 134 S. Ct. at 2473. Accepting the truth of the Complaint's allegations, a reasonable fiduciary monitoring the Plan's holdings of SunEdison stock could have concluded that freezing or selling the Company's shares would have driven the share price downward, hastening its decline and injuring plan participants.

Separately, plaintiffs' argument that <u>Tibble</u> recognized an actionable "procedural" duty to monitor a plan's holdings, regardless of any subsequent action concerning those holdings, over-reads the language of <u>Tibble</u>.  (Opp. Mem. at 18.)  <u>Tibble</u> stated that a trustee "has a continuing duty to monitor trust investments <u>and remove imprudent ones</u>."  135 S. Ct. at 1826 (emphasis added).  But <u>Tibble</u> does not stand for the proposition that ERISA provides an actionable claim based solely on a procedural duty to monitor, and instead includes the next step of removing imprudent investments.  In the context of an ESOP claim, that would necessarily require a plausible allegation explaining how no reasonable fiduciary could conclude that removing such investments would not be likely to do more harm than good to the plan and its participants.  <u>Fifth Third</u>, 134 S. Ct. at 2472; <u>see also</u> <u>Kopp v. Klein</u>, 894 F.3d 214, 221 (5th Cir. 2018) (assuming that a fiduciary can be liable for breach of procedural prudence, a plaintiff would still have to identify losses resulting from that breach).

To the extent that the Complaint alleges that members of the board of directors are liable for failing to monitor the imprudent actions of the Investment Committee and take corrective actions, any such claim is dismissed because the Complaint does not plausibly allege a breach of the duty of prudence.  <u>See</u>, <u>e.g.</u>, <u>Rinehart</u>, 817 F.3d at 68 (affirming dismissal of monitoring claim when plaintiffs failed to identify a breach of prudence by the plan committee); <u>Jander v. Int'l Bus. Machines Corp.</u>, 205 F. Supp. 3d 538, 546-47 (S.D.N.Y. 2016) ("Because Plaintiffs have failed to allege an underlying breach, the duty to monitor claim is dismissed.") (Pauley, J.).  Any claims purporting to allege that defendants breached co-fiduciary obligations by participating in one another's breaches are dismissed for the same reason.  <u>See</u>, <u>e.g.</u>, <u>Coulter v. Morgan Stanley & Co.</u>, 753 F.3d 361, 368 (2d Cir. 2014) (dismissing breach of co-fiduciary

18

duty because such a claim "cannot survive absent a viable claim for breach of a duty of prudence.").

Plaintiffs have failed to plausibly allege that defendants breached a duty to monitor the Plan's holdings. Because plaintiffs fail to plausibly allege the breach of a separate duty to monitor, Count Three of the Complaint is dismissed.

E. The Complaint Does Not Plausibly Allege a Breach of the Duty of Loyalty.

Count Two of the Complaint alleges that defendants breached the duty of loyalty that they owed to the Plan under ERISA. ERISA's duty of loyalty is based in 29 U.S.C. § 1104(a)(1), which requires plan fiduciaries to act "solely in the interest" of plan "participants and beneficiaries." The Second Circuit has described the duty as one requiring a fiduciary to "act, in Judge Friendly's felicitous phrase, with an 'eye single to the interests of the participants and beneficiaries.'" State St. Bank & Trust Co. v. Salovaara, 326 F.3d 130, 136 (2d Cir. 2003) (quoting Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982)). If a company's officers or directors are appointed to act as plan fiduciaries, they must act loyally to plan participants when serving in their capacities as ERISA fiduciaries, and must not be swayed by their separate responsibilities to the corporation. See Rothstein, 837 F.3d at 209. Because "ERISA presumes that the interests of the employer and the employer-sponsored plans are adverse," the statute's duty of loyalty is to be strictly enforced so as to prevent a plan from being controlled by the employer corporation. Id. at 208 (emphasis in original).

Plaintiffs allege that all defendants violated the duty of loyalty. (Compl't ¶¶ 267-79.) They allege that because "at least some" defendants were compensated with SunEdison stock, they were in conflict with the interests of Plan participants and unable to fulfill their

fiduciary obligations. (Compl't ¶¶ 272, 276.) They also allege that defendants did not satisfy the duty of loyalty because they took no action to protect the Plan when faced with negative developments for the Company. As an example, plaintiffs observe that SunEdison's stock price fell after the July 2015 announcement of the planned acquisition of Vivint Solar, Inc., and that the market reaction was a "red flag[ ]" ignored by defendants. (Compl't ¶ 85; Opp. Mem. at 17.)

Plaintiffs' allegations that some defendants had a financial interest in the performance of SunEdison stock is insufficient to allege a breach of the duty of loyalty. As explained by the Second Circuit:

> Plaintiffs do not allege any specific facts suggesting that defendants' investments in [company] stock prompted them to act against the interests of Plan participants. Under plaintiffs reasoning, almost no corporate manager could ever serve as a fiduciary of his company's Plan. There simply is no evidence that Congress intended such a severe interpretation of the duty of loyalty.

In re Citigroup ERISA Litig., 662 F.3d 128, 145-46 (2d Cir. 2011), abrogated on other grounds by Fifth Third, 134 S. Ct. at 2465; accord Coulter, 753 F.3d at 368 (citing Citigroup); Kopp, 894 F.3d at 221-22 (allegation that defendants acted to protect the value of their own shares could be "consistent with protecting the Plan's existing holdings of [company] stock."). Plaintiffs have not alleged facts that raise a plausible inference that the interests of the fiduciaries were antagonistic to those of the Plan, or that any defendant was enriched at the expense of the Plan or its participants.

To the extent that plaintiffs allege that defendants breached the duty of loyalty by failing to act appropriately in light of negative developments about the Company, such allegations merely repackage plaintiffs' breach of prudence claims under a different label.

20

Because these allegations are derivative and do not satisfy the Fifth Third standard, the duty of loyalty claim is also dismissed. See, e.g., In re Pfizer Inc. ERISA Litig., 2013 WL 1285175, at *10 (S.D.N.Y. Mar. 29, 2013) (dismissing duty of loyalty claims that were derivative of plaintiffs' unsuccessful duty of prudence claims) (Swain, J.).

CONCLUSION

Defendants' motion to dismiss is GRANTED. The Clerk is directed to terminate the motion, as well as the previous motion to dismiss that was filed prior to the Complaint's most recent amendment. (16-md-2742, Docket # 228, 248; 16-mc-2744, Docket # 27, 33.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        August 6, 2018